IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
*Eastern Division*
www.ilnb.uscourts.gov

| | |
|---|---|
| In re:<br><br>JULIAN UNGAR-SARGON, et al.,<br><br>Debtors. | Chapter 7 Proceeding<br><br>Case No. 06 B 08108<br>(Jointly Administered)<br><br>Hon. Eugene R. Wedoff |

## FINAL REPORT OF PATIENT CARE OMBUDSMAN

By:   THOMAS P. CONLEY, Ombudsman

THOMAS P. CONLEY, not individually, but solely in his representative capacity as Patient Care Ombudsman ("Ombudsman"), hereby reports as follows with respect to the above-captioned Chapter 7 case:

1.   This case was initiated by the Debtor, Julian Ungar-Sargon, M.D. (the "Doctor"), filing a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on July 11, 2006.

2.   On December 21, 2006, the case was converted to one under Chapter 7 of the Bankruptcy Code. Thereafter, David R Herzog was appointed as the Chapter 7 Trustee (the "Trustee").

3.   On April 5, 2007, the Trustee caused Neuropraxis, P.C., a professional corporation solely owned by the Doctor ("Neuropraxis"), to file for bankruptcy relief under chapter 7 of the Bankruptcy Code.

4.   On April 27, 2007, the Doctor resigned from Neuropraxis effective at 5:00 p.m. that day. As a consequence of the resignation, Neuropraxis did not have a physician in its employ to provide medical services and would not be able to provide professional care to Neuropraxis patients.

5.    On May 1, 2007, the United States Trustee appointed the Ombudsman pursuant to § 333 of the Bankruptcy Code.

6.    On May 2, 2007, the United States Trustee, the Ombudsman and the Ombudsman's counsel met with the Trustee and his counsel in the offices of the United States Trustee to discuss patient care issues; specifically, (i) determining the current condition of Neuropraxis' patient records, (ii) assuring patients were currently able to access their medical records in a timely fashion, (iii) assuring the provision of immediate continuity of care for existing Neuropraxis patients with scheduled appointments, (iv) arranging for continuity of care for Neuropraxis patients without scheduled appointments; and (v) determining the future disposition of the patient records and how they would be made available to patients.

7.    During the May 2, 2007 meeting in the offices of the United States Trustee, a telephone conference with the Doctor's counsel was initiated, first with the United States Trustee, the Ombudsman and the Ombudsman's counsel and, subsequently with the additional participation of the Trustee and his counsel.

8.    During the May 2, 2007, meeting in the offices of the United States Trustee, the Trustee provided the Ombudsman with information regarding the steps he had taken to secure the patient records and to provide access to patients requesting copies of their records. The Trustee's representations and undertakings with respect to the patient records were memorialized in a letter agreement between the Trustee and the Ombudsman's counsel dated May 3, 2007, a copy of which is attached hereto as Exhibit "A". The patient records appear to have been properly secured by the Trustee and patients were purportedly able to obtain copies of their medical records in a timely manner.

9. Following discussions with the Doctor's Counsel and the Trustee's Counsel, the Doctor agreed to provide services for all Neuropraxis patients with appointments. Copies of the e-mail correspondence between the parties, dated May 3, 2007 through May 4, 2007, setting forth the issues raised and their resolution are attached as Exhibit B. It appears the immediate need for continuity of care for Neuropraxis patients was met and all patients with appointments received care from the Doctor.

10. The Ombudsman confirmed that the Doctor intended to continue to practice in Northern Indiana but that he did not want to maintain copies of the Neuropraxis patient files. A copy of the e-mail from the Doctor's counsel to the Ombudsman, dated May 4, 2007, confirming that the Doctor "is not in a position to pay for the patient records" is attached as Exhibit "C."

11. The Ombudsman worked with the Trustee's counsel to help identify parties who would be willing to take possession of the medical records to assure they remain available for future patient access. The Ombudsman further worked with the Trustee's counsel to address patient privacy concerns arising from the transfer of the medical records to a new custodian.

12. On May 5, 1007, the United States Trustee, the Ombudsman, the Trustee and the Doctor approved the general form of the notice to be sent to patients advising them of the dissolution of Neuropraxis, where they may obtain copies of their medical records in the future, and where they may obtain continuing care. Advance approval of the notice allowed the Trustee to show the notice to potential successor medical record custodians to induce them to accept responsibility for the records.

13. On May 22, 2007, the Trustee identified a successor custodian for the medical records and a purchaser for the goodwill of Neuropraxis, Hind General Hospital, LLC. ("Hind").

14. To assure compliance with Indiana law on the transfer of the patient records to Hind, on May 30, 2007, the Ombudsman provided the Trustee's counsel with an initial draft of the Sale of Goodwill and Medical Record Transfer Agreement.

15. On June 22, 2007, this Court approved the Trustee's sale of the goodwill of Neuropraxis and the transfer of the medical records of Neuropraxis to Hind.

16. The Ombudsman worked with the parties to finalize the notice to patients regarding the transfer of their medical records to Hind and where they could seek continuing care. The revised notice was approved by all parties on June 28, 2007.

17. From the date of the original undertaking by the Trustee with regard to patient records, the Ombudsman has sought and obtained additional assurances from the Trustee that Neuropraxis' phones were being answered and medical records were being made available to patients.

18. The medical records were transferred to Hind as successor custodian on July 25, 2007, and the Trustee's sale of Neuropraxis' goodwill closed on July 30, 2007. Notices of the transfer of the records were sent to patients on August 7, 2007. The telephone numbers for Neuropraxis were transferred to Hind on August 9, 2007 and Hind has agreed to maintain such phone lines a minimum of 60 days. To assure the patients arriving at the former offices of Neuropraxis have notice that their records have been transferred, the Ombudsman obtained the assurance of the Trustee that notice of the transfer will be maintained on the door of Neuropraxis' offices until the offices are sold by the Trustee.

19. On August 6, 2007, in response to a complaint sent by the Doctor to the Ombudsman regarding calls to Neuropraxis' telephone number not being answered, the Ombudsman confirmed that the number was working and voice mail was an option, but that the voice mail system did not allow sufficient time to leave a message. The Ombudsman contacted Mr. Nylen who assured the Ombudsman that the problem would be fixed immediately. The problem was resolved on August 9, 2007

20. All responsibilities of the Ombudsman have been satisfied. During the wind-down of Neuropraxis, continuity of care was assured and Neuropraxis' medical records were preserved and made available to patients in a timely fashion. Custody of the Neuropraxis medical records have been transferred to a responsible and solvent party. Notice has been provided to all Neuropraxis patients by mail, at their respective last known addresses on the records of Neuropraxis, as to where their medical records will be maintained in the future and who to contact to obtain continuing care. Patients attempting to contact Neuorpraxis in person will, for a time, see a posted notice as to where their records may be found. Patients attempting to contact Neuorpraxis by phone will be informed where their records will be found. The rights and interests of the patients on Neuropraxis have been protected to the extent reasonably possible. No further action on behalf of the Ombudsman is required or needed.

Dated: September 25, 2007

Signed:

THOMAS P. CONLEY, not individually,
but solely in his representative capacity as
Patient Care Ombudsman

# EXHIBIT A

LAW OFFICES

# ARNSTEIN & LEHR LLP

120 SOUTH RIVERSIDE PLAZA · SUITE 1200
CHICAGO, ILLINOIS 60606-3910
(312) 876-7100
FAX (312) 876-0288
www.arnstein.com
FOUNDED 1893

Barry A. Chatz
(312) 876-6670
bachatz@arnstein.com

BOCA RATON, FLORIDA
FORT LAUDERDALE, FLORIDA
MIAMI, FLORIDA
TAMPA, FLORIDA
WEST PALM BEACH, FLORIDA
HOFFMAN ESTATES, ILLINOIS
MILWAUKEE, WISCONSIN

MEMBER OF INTERNATIONAL
LAWYERS NETWORK

May 3, 2007

*Via e-mail: hgoldstein@freebornpeters.com*
*snylen@freebornpeters.com*

Harley J. Goldstein, Esq.
Sven T. Nylen, Esq.
Freeborn & Peters LLP
311 S. Wacker Drive, Suite 3000
Chicago, IL 60606

    Re:    Julian Ungar-Sargon
            06 B 08108

Dear Harley and Sven:

    In follow up to our meeting yesterday at the Office of the United States Trustee, the following confirms and clarifies our agreement with respect to the Trustee's maintenance of the patient medical records of the above-noted Debtor and Neuropraxis, Inc. located in the Neuropraxis facility at 270 East 90th Drive in Merrillville, Indiana:

1. The Trustee has secured all known patient medical records by changing the locks on the facility and limiting access to the facility and the patient medical records to those who understand patient confidentiality requirements and are trusted to observe those requirements.

2. The Trustee has secured all computers that contain protected health information ("PHI") so that no unauthorized user may access the PHI directly or via the internet or otherwise.

3. The Trustee has personnel in place to receive requests for medical records between the hours of 9:00 a.m. and 5:00 p.m. Monday through Friday, excluding holidays. Further, the Trustee's personnel will generally be able to deliver copies of medical records to patients within 24 hours of receipt of a proper consent or authorization. For requests made on Friday, delivery will be made by the end of business on Monday.

1146217_1.DOC

Sven T. Nylen, Esq.
May 3, 2007
Page 2

4. The Trustee intends to preserve and protect all PHI in accordance with all relevant state and federal laws. This means, amongst other things, that the Trustee will limit access to PHI to the minimum necessary to accomplish treatment, payment or health care operations except as authorized by the patient, legally authorized patient representative, or law. Further, the Trustee has in place procedures to track and account for disclosures of PHI, to allow patients to add amendments to their medical records, and to allow patients to request restrictions to the disclosure of PHI.

5. The Trustee will keep these patient protections in place until an eligible, responsible successor approved by the United States Trustee and Mr. Conley as health care ombudsman accepts responsibility for the patient records or, in the alternative, at least seven (7) days advance notice is given to the United States Trustee and Mr. Conley.

If these terms are acceptable to the Trustee, please have him sign and return a copy of this letter to me as soon as possible.

Very truly yours,

/s/ Barry A. Chatz
Barry A. Chatz

AGREED:

_____
David Herzog, Trustee

BAC:jbm

cc  Sandra Rasnak
    Cameron Gulden
    Thomas P. Conley
    Joy E. Levy

# EXHIBIT B

**Conley, Thomas P.**

| | |
|---|---|
| **From:** | Robert Benjamin [rbenjamin@querrey.com] |
| **Sent:** | Thursday, May 03, 2007 11:50 AM |
| **To:** | Nylen, Sven |
| **Cc:** | Conley, Thomas P. |
| **Subject:** | Ungar-Sargon, 06 B 8108 |

Sven, the Neuropraxis consultants have asked Dr. Ungar to be present at the Neuropraxis premises on Monday, May 7, 2007 and each succeeding Monday until current scheduled appointments are concluded. Please confirm that the trustee agrees to permit Dr. Ungar to attend to patients, have access to the patients, that you will have support staff to assist him and that he may turnover patient records to each patient if requested in writing with an approved form.

You can be assured that Dr. Ungar will not appear at Neuropraxis without your written approval.

Bob

Robert R. Benjamin
Querrey & Harrow, Ltd.
175 West Jackson Blvd., Suite 1600
Chicago, IL  60604-2827
(312)540-7140 - Voice
(312)540-0578 - Fax
e-mail:  rbenjamin@querrey.com

*The information contained in this e-mail is attorney privileged and confidential information intended only for the use of the individual or entity to whom or to which it is addressed. If the recipient of this transmission is not the intended recipient, the recipient is hereby notified that any dissemination, distribution, or reproduction of this communication is strictly prohibited. If you have received this communication in error, please notify the above immediately and destroy your copy. Thank You.*

## Conley, Thomas P.

**From:** Nylen, Sven [snylen@freebornpeters.com]
**Sent:** Friday, May 04, 2007 10:05 AM
**To:** Conley, Thomas P.
**Subject:** Ungar

Tom---let me know if you have any issue with this email that I am going to send to Benjamin:

At the direction of the patient care ombudsman, the chapter 7 trustee will allow Dr. Ungar to be present at the NeuropraXis office to attend to those patients with remaining scheduled appointments and handle his administrative paperwork. Based on conversations between the trustee's consultants and Dr. Ungar, the trustee will have one nurse there to assist Dr. Ungar and appropriate clerical staff.

As I understand, Dr. Ungar and the trustee's consultants have agreed that Dr. Ungar will be present at NeuropraXis to handle these patients on May 7, 9, 14, and 16. Dr. Ungar will be paid by NeuropraXis for the services he provides during this time.

Sven T. Nylen
Freeborn & Peters LLP
311 S. Wacker Dr., Suite 3000
Chicago, Illinois 60606
Telephone: 312-360-6681
Facsimile: 312-360-6572
snylen@freebornpeters.com

**Conley, Thomas P.**

| | |
|---|---|
| **From:** | Nylen, Sven [snylen@freebornpeters.com] |
| **Sent:** | Friday, May 04, 2007 10:37 AM |
| **To:** | Robert Benjamin |
| **Cc:** | Conley, Thomas P.; Chatz, Barry A. |
| **Subject:** | NeuropraXis/Ungar: Access to NeuropraXis |

Bob,

At the direction of the patient care ombudsman, the chapter 7 trustee will allow Dr. Ungar to be present at the NeuropraXis office to attend to those patients with remaining scheduled appointments and handle his administrative paperwork. Based on conversations between the trustee's consultants and Dr. Ungar, the trustee will have one nurse there to assist Dr. Ungar and appropriate clerical staff.

As I understand, Dr. Ungar and the trustee's consultants have agreed that Dr. Ungar will be present at NeuropraXis to handle these patients on May 7, 9, 14, and 16. Dr. Ungar will be paid by NeuropraXis for the services he provides during this time.

Patient files will remain the property of NeuropraXis and will be handled according to the procedures that will be set forth in the letter to patients that the parties are working on.

Regards,

Sven T. Nylen
Freeborn & Peters LLP
311 S. Wacker Dr., Suite 3000
Chicago, Illinois 60606
Telephone: 312-360-6681
Facsimile: 312-360-6572
snylen@freebornpeters.com

**Conley, Thomas P.**

| | |
|---|---|
| **From:** | Robert Benjamin [rbenjamin@querrey.com] |
| **Sent:** | Friday, May 04, 2007 1:17 PM |
| **To:** | Nylen, Sven |
| **Cc:** | Conley, Thomas P.; Chatz, Barry A. |
| **Subject:** | RE: NeuropraXis/Ungar: Access to NeuropraXis |

Thank you Sven, I have forwarded this e-mail to Dr. Ungar and expect a response shortly. I was unaware that he was expected to be at Neuropraxis on Wednesday also. Can you advise as to how much he will be paid and when payment is to be made.

Bob

Robert R. Benjamin
Querrey & Harrow, Ltd.
175 West Jackson Blvd., Suite 1600
Chicago, IL 60604-2827
(312)540-7140 - Voice
(312)540-0578 - Fax
e-mail: rbenjamin@querrey.com

*The information contained in this e-mail is attorney privileged and confidential information intended only for the use of the individual or entity to whom or to which it is addressed. If the recipient of this transmission is not the intended recipient, the recipient is hereby notified that any dissemination, distribution, or reproduction of this communication is strictly prohibited. If you have received this communication in error, please notify the above immediately and destroy your copy. Thank You.*

---

**From:** Nylen, Sven [mailto:snylen@freebornpeters.com]
**Sent:** Friday, May 04, 2007 10:37 AM
**To:** Robert Benjamin
**Cc:** tpconley@arnstein.com; bachatz@arnstein.com
**Subject:** NeuropraXis/Ungar: Access to NeuropraXis

Bob,

At the direction of the patient care ombudsman, the chapter 7 trustee will allow Dr. Ungar to be present at the NeuropraXis office to attend to those patients with remaining scheduled appointments and handle his administrative paperwork. Based on conversations between the trustee's consultants and Dr. Ungar, the trustee will have one nurse there to assist Dr. Ungar and appropriate clerical staff.

As I understand, Dr. Ungar and the trustee's consultants have agreed that Dr. Ungar will be present at NeuropraXis to handle these patients on May 7, 9, 14, and 16. Dr. Ungar will be paid by NeuropraXis for the services he provides during this time.

Patient files will remain the property of NeuropraXis and will be handled according to the procedures that will be set forth in the letter to patients that the parties are working on.

Regards,

Sven T. Nylen
Freeborn & Peters LLP
311 S. Wacker Dr., Suite 3000
Chicago, Illinois 60606

**Conley, Thomas P.**

**From:** Nylen, Sven [snylen@freebornpeters.com]
**Sent:** Friday, May 04, 2007 1:29 PM
**To:** Robert Benjamin
**Cc:** Conley, Thomas P.; Chatz, Barry A.
**Subject:** RE: NeuropraXis/Ungar: Access to NeuropraXis

Bob,

He agreed with the consultants to come in on Wednesdays so we can move this along expeditiously. He will be paid $7,500 for this arrangement, to be paid on Friday, May 18, 2007.

---

**From:** Robert Benjamin [mailto:rbenjamin@querrey.com]
**Sent:** Friday, May 04, 2007 1:17 PM
**To:** Nylen, Sven
**Cc:** tpconley@arnstein.com; bachatz@arnstein.com
**Subject:** RE: NeuropraXis/Ungar: Access to NeuropraXis

Thank you Sven, I have forwarded this e-mail to Dr. Ungar and expect a response shortly. I was unaware that he was expected to be at Neuropraxis on Wednesday also. Can you advise as to how much he will be paid and when payment is to be made.

Bob

Robert R. Benjamin
Querrey & Harrow, Ltd.
175 West Jackson Blvd., Suite 1600
Chicago, IL  60604-2827
(312)540-7140 - Voice
(312)540-0578 - Fax
e-mail:  rbenjamin@querrey.com

*The information contained in this e-mail is attorney privileged and confidential information intended only for the use of the individual or entity to whom or to which it is addressed. If the recipient of this transmission is not the intended recipient, the recipient is hereby notified that any dissemination, distribution, or reproduction of this communication is strictly prohibited. If you have received this communication in error, please notify the above immediately and destroy your copy. Thank You.*

---

**From:** Nylen, Sven [mailto:snylen@freebornpeters.com]
**Sent:** Friday, May 04, 2007 10:37 AM
**To:** Robert Benjamin
**Cc:** tpconley@arnstein.com; bachatz@arnstein.com
**Subject:** NeuropraXis/Ungar: Access to NeuropraXis

Bob,

At the direction of the patient care ombudsman, the chapter 7 trustee will allow Dr. Ungar to be present at the NeuropraXis office to attend to those patients with remaining scheduled appointments and handle his administrative paperwork. Based on conversations between the trustee's consultants and Dr. Ungar, the trustee will have one nurse there to assist Dr. Ungar and appropriate clerical staff.

As I understand, Dr. Ungar and the trustee's consultants have agreed that Dr. Ungar will be present at NeuropraXis to handle

**Conley, Thomas P.**

| | |
|---|---|
| **From:** | Robert Benjamin [rbenjamin@querrey.com] |
| **Sent:** | Friday, May 04, 2007 2:12 PM |
| **To:** | Nylen, Sven |
| **Cc:** | Conley, Thomas P.; Chatz, Barry A.; Cameron.M.Gulden@usdoj.gov; Rasnak, Sandra |
| **Subject:** | RE: NeuropraXis/Ungar: Access to NeuropraXis |

Dr. Ungar will be at Neuropraxis on Monday and Wednesday commencing at 9:00 A.M. on May 7, 9, 14 and 16 to see patients. Dr. Ungar accepts your payment arrangement for the those four (4) days. Please advise when he can expect to receive the balance of his administrative expenses for wages incurred in the previous month post petition.


Robert R. Benjamin
Querrey & Harrow, Ltd.
175 West Jackson Blvd., Suite 1600
Chicago, IL  60604-2827
(312)540-7140 - Voice
(312)540-0578 - Fax
e-mail: rbenjamin@querrey.com

*The information contained in this e-mail is attorney privileged and confidential information intended only for the use of the individual or entity to whom or to which it is addressed. If the recipient of this transmission is not the intended recipient, the recipient is hereby notified that any dissemination, distribution, or reproduction of this communication is strictly prohibited. If you have received this communication in error, please notify the above immediately and destroy your copy. Thank You.*

---

**From:** Nylen, Sven [mailto:snylen@freebornpeters.com]
**Sent:** Friday, May 04, 2007 1:29 PM
**To:** Robert Benjamin
**Cc:** tpconley@arnstein.com; bachatz@arnstein.com
**Subject:** RE: NeuropraXis/Ungar: Access to NeuropraXis

Bob,

He agreed with the consultants to come in on Wednesdays so we can move this along expeditiously. He will be paid $7,500 for this arrangement, to be paid on Friday, May 18, 2007.

---

**From:** Robert Benjamin [mailto:rbenjamin@querrey.com]
**Sent:** Friday, May 04, 2007 1:17 PM
**To:** Nylen, Sven
**Cc:** tpconley@arnstein.com; bachatz@arnstein.com
**Subject:** RE: NeuropraXis/Ungar: Access to NeuropraXis

Thank you Sven, I have forwarded this e-mail to Dr. Ungar and expect a response shortly. I was unaware that he was expected to be at Neuropraxis on Wednesday also. Can you advise as to how much he will be paid and when payment is to be made.

Bob

Robert R. Benjamin
Querrey & Harrow, Ltd.

## Conley, Thomas P.

**From:** Robert Benjamin [rbenjamin@querrey.com]
**Sent:** Friday, May 04, 2007 2:16 PM
**To:** Conley, Thomas P.; Nylen, Sven
**Cc:** Beverly Berneman; Eileen Madda; Rasnak, Sandra; Cameron.M.Gulden@usdoj.gov; Chatz, Barry A.; Shelest, Irina
**Subject:** RE: 2d Ombudsman draft of Patient Notice Letter regarding Records and Continued Care - Dr. Ungar.DOC

Tom, Dr. Ungar will be present at Neuropraxis for the next two weeks seeing patients on Monday and Wednesday. Your further changes to the patient letter are satisfactory. I believe that concludes our involvement with your present concerns over patient care and records. Please advise if you need anything further.

Bob

Robert R. Benjamin
Querrey & Harrow, Ltd.
175 West Jackson Blvd., Suite 1600
Chicago, IL 60604-2827
(312)540-7140 - Voice
(312)540-0578 - Fax
e-mail: rbenjamin@querrey.com

*The information contained in this e-mail is attorney privileged and confidential information intended only for the use of the individual or entity to whom or to which it is addressed. If the recipient of this transmission is not the intended recipient, the recipient is hereby notified that any dissemination, distribution, or reproduction of this communication is strictly prohibited. If you have received this communication in error, please notify the above immediately and destroy your copy. Thank You.*

---

**From:** Conley, Thomas P. [mailto:TPCONLEY@arnstein.com]
**Sent:** Friday, May 04, 2007 2:02 PM
**To:** Robert Benjamin; Nylen, Sven
**Cc:** Beverly Berneman; Eileen Madda; Rasnak, Sandra; Cameron.M.Gulden@usdoj.gov; Chatz, Barry A.; Shelest, Irina
**Subject:** 2d Ombudsman draft of Patient Notice Letter regarding Records and Continued Care - Dr. Ungar.DOC

Gentlemen,

I have reviewed the HIPAA notice provided to me by Mr. Benjamin and believe it is consistent with the patient notice letter we drafted. I have amended my draft of the patient notice letter to simplify the first 2 paragraphs, as requested by Mr. Gulden, and changed the provisions regarding Dr. Ungar maintaining a copy of the patient records. A revised version of the notice letter is attached. This should leave only two open issues for the letter: (1) who does the Trustee want to select to be custodian of the records, and (2) what copying costs does the Trustee want to specify in the letter. These 2 issues must be resolved before the hearing on May 10.

I spoke with Mr. Gulden regarding his e-mail on copying charges. He raises an interesting issue as to what is a reasonable charge under the circumstances. Should Indiana law control or bankruptcy limits. I believe the issue may be resolved by the Trustee estimating what the actual costs will be to produce a copy of a medical record. The Trustee may need to talk with the successor custodian about this issue.

The only other issue that needs to be resolved is physician coverage for patient appointments starting on Monday. I believe the ball is in Mr. Benjamin's court based upon Sven's 1:28 p.m. e-mail this afternoon. Please do whatever is necessary to resolve this issue before 4:00 p.m. today. Please let me know how the issue is resolved.

If anyone has any questions or comments, please contact me as soon as possible.

# EXHIBIT C

**Conley, Thomas P.**

---

**From:** Robert Benjamin [rbenjamin@querrey.com]
**Sent:** Friday, May 04, 2007 9:40 AM
**To:** Conley, Thomas P.; Nylen, Sven
**Cc:** Beverly Berneman; Eileen Madda; Rasnak, Sandra; Cameron.M.Gulden@usdoj.gov; Chatz, Barry A.; Shelest, Irina
**Subject:** RE: Patient Notice Letter

Tom the Patient Notice Letter with your revisions is satisfactory. Dr. Ungar is not in a position to pay for patient records. Dr. Ungar will shortly be forwarding a copy of the HIPPA consent used by Neuropraxis and I will forward it on to you.

We are still awaiting written authorization to permit Dr. Ungar to see patients on Monday. Please provide your approval with whatever limitations you or the trustee need.

Robert R. Benjamin
Querrey & Harrow, Ltd.
175 West Jackson Blvd., Suite 1600
Chicago, IL  60604-2827
(312)540-7140 - Voice
(312)540-0578 - Fax
e-mail: rbenjamin@querrey.com

*The information contained in this e-mail is attorney privileged and confidential information intended only for the use of the individual or entity to whom or to which it is addressed. If the recipient of this transmission is not the intended recipient, the recipient is hereby notified that any dissemination, distribution, or reproduction of this communication is strictly prohibited. If you have received this communication in error, please notify the above immediately and destroy your copy. Thank You.*

---

**From:** Conley, Thomas P. [mailto:TPCONLEY@arnstein.com]
**Sent:** Thursday, May 03, 2007 8:59 PM
**To:** Robert Benjamin; Nylen, Sven
**Cc:** Beverly Berneman; Eileen Madda; Rasnak, Sandra; Cameron.M.Gulden@usdoj.gov; Chatz, Barry A.; Shelest, Irina
**Subject:** Patient Notice Letter

Gentlemen,

I would like to comment on Mr. Benjamin's revision of Mr. Nylen's version of the patient notice letter.

I have prepared a revised letter for your review, but it is incomplete because I do not have all the information needed to finalize it.

I need to know now whether Dr. Ungar wants to purchase a copy of the patient files from Neuropraxis. The patients need to know if they will be charged if they continue their treatment with Dr. Ungar. If Dr. Ungar does not purchase a copy of the patient files, then the patients may be charged a fee for copies of their records as discussed below. If Dr. Ungar does purchase a copy of the patient files, I think the letter should be clear that the patient need not obtain a copy of his or her records before seeing Dr. Ungar. Accordingly, Mr. Benjamin, please let me know whether Dr. Ungar wants to purchase copies of the medical records. I have assumed that he will purchase a copy of the records in the attached proposed revision to the patient notice letter.

As Dr. Ungar was the treating physician, I do not believe we need the patient's consent to transfer a copy of the patient's record to Dr. Ungar. I believe that both Dr. Ungar and Neuropraxis have a right to maintain a copy of the patient files. Getting a patient's authorization before each file is transferred may, in my opinion, unnecessarily delay care and place an undue burden on patients if Dr. Ungar has purchased a copy of the files. So again, the letter to the patients must be clear whether the patient need provide an authorization if he or she seeks continued treatment from Dr. Ungar.

To confirm my belief on these issues, I need to see the form HIPAA consent Dr. Ungar and Neuropraxis used. I ask that Mr.

Benjamin or Mr. Nylen provide me with a copy of the form as soon as possible.

Neuropraxis and the successor custodian may charge a reasonable cost based fee for copying records. The fee may include the cost to copy and mail the records but may not contain a charge for retrieval of the records or processing of the request. If you intend to impose a fee to copy records, it should be stated in the patient letter. Mr. Nylen, please provide me with the Trustee's decision in this regard. In the attached preliminary revision of the patient notice letter, I have included an example of how the copying charge would be communicated to the patient. I am willing to entertain other reasonable methods for determining the copying charges.

Mr. Nylen, we need to know the name of the custodian. You need to identify that person or group quickly so that the letter may be sent.

Finally, we need to determine how the patient address list is to be created. I believe that creation of the list may fall to the Trustee as possessor of the records, although Dr. Ungar's assistance may be required to be sure the addresses are correctly culled from his patient records. I would guess that the billing software used by Neuropraxis could generate the list. As the notice is the responsibility of both Neuropraxis and Dr. Ungar, I suggest that the costs of mailing be split between the parties. Please let me know if there are any issues in this regard.

I look forward to your responses.

**Thomas P. Conley**
ARNSTEIN & LEHR LLP
www.arnstein.com

120 South Riverside Plaza
Suite 1200
Chicago, Illinois 60606-3910
Phone: 312.876.7809
Fax: 312.876.0288
tpconley@arnstein.com

Offices in Illinois, Florida, and Wisconsin

---

**From:** Robert Benjamin [mailto:rbenjamin@querrey.com]
**Sent:** Thursday, May 03, 2007 4:43 PM
**To:** Nylen, Sven
**Cc:** Conley, Thomas P.; Beverly Berneman; Eileen Madda
**Subject:** DOCSLIB1-#1224590-v1-Neuropraxis_Letter_for_Patient_Care

Sven, I've suggested a couple additions to your letter to patients and a form to be used for a patient obtaining a file. Please review and advise.

Bob

---

This electronic mail transmission may contain confidential or privileged information. If you believe that you have received this message in error, please notify the sender by reply transmission and delete the message without copying or disclosing it.

Pursuant to Internal Revenue Service guidance, be advised that any federal tax advice contained in this written or electronic communication, including any attachments or enclosures, is not intended or written to be used and it cannot be used by any person or entity for the purpose of (i) avoiding any tax penalties that may be imposed by the Internal Revenue Service or any other U.S. Federal taxing authority or agency or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

---

9/25/2007